IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JAMES M., by and through his parent SHERRY M.,, | ) ) ) | CIVIL NO. 10-00369 LEK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| STATE OF HAWAI`I, DEPARTMENT OF EDUCATION, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER AFFIRMING HEARING OFFICER'S MAY 31, 2010 DECISION

Before the Court is an appeal by Plaintiffs James M., by and through his parent Sherry M. (collectively, "Plaintiffs"), of a hearings officer's Findings of Fact, Conclusions of Law and Decision ("Hearing Decision"),[1] filed May 31, 2010, concluding that James M. was offered a free appropriate public education ("FAPE") in accordance with the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1401 et seq. Plaintiffs appealed the Hearing Decision on July 1, 2010 and filed their opening brief on November 6, 2010. On December 9, 2010, Defendant Department of Education, State of Hawai`i ("Defendant") filed its responsive brief.

This matter came on for hearing on January 10, 2011. Carl Varady, Esq., appeared on behalf of Plaintiffs.

---

[1] The Hearing Decision can be found in the Administrative Record on Appeal ("ROA") at 187-213.

Michelle Puu, Esq., appeared on behalf of Defendant.  After
careful consideration of the briefs and the arguments of counsel,
the Court HEREBY AFFIRMS the Hearing Decision.

**BACKGROUND**

## I.   **Factual History**

James M. is a nineteen-year-old student who has been
diagnosed with dysarthia and hypotonia.  He has been eligible for
special education and related services from Defendant under the
category of Autism since 1999.
[Hrg. Decision at 4.]  James M.'s neurological, motor, and speech
deficits affect, *inter alia*, his handwriting, gait, saliva
control, attention span, visual and sensory perception, and word
retrieval.  [Id. at 4, 6-9, 16.]

James M. attended Kahuku High and Intermediate School
("Kahuku") in the Windward School District ("School District")
for five academic years beginning in the seventh grade.  [Id. at
4.]  During his junior year (2007-2008), James M. attended both
special education and general education classes at Kahuku.
Special education supports, including one-on-one
paraprofessionals, assisted James M. in the general education
setting.  [Id. at 10.]  Upon completion of his junior year,
James M. had a cumulative grade point average of 3.162 and needed
only 3.5 more credits to receive a high school diploma.  [Id. at
12.]  During the fall of 2008, Plaintiff Sherry M. unilaterally

transferred James M. from Kahuku to Loveland Academy ("Loveland"), a small, private, community-based day treatment program.  As of January 1, 2009, Loveland was accredited by the National Independent Private Schools Association ("NIPSA") for only pre-kindergarten through ninth grade.[2]  [Id. at 4.] James M. would not receive credit towards a public high school degree for schoolwork completed at Loveland.  [Id. at 15-16 (citing the testimony of Hawai`i Department of Education Complex Area Superintendent Albert Lea).]

On April 9, 2009, Plaintiff Sherry M. contacted Kahuku Principal Donna Lindsey ("Principal Lindsey") by phone and informed her that she would not be available to attend James M.'s annual Individualized Education Plan ("IEP") meeting scheduled for April 13, 2009.  She also advised Principal Lindsey that she would not be available to meet until after April 30, 2009.  In a letter dated April 11, 2009, Principal Lindsey memorialized the contents of that conversation and apprised Plaintiff Sherry M. of the latest arrangements for James M.'s annual IEP.  Specifically,

_____

[2] Robert Witt, the Executive Director of the Hawai`i Association of Independent Schools ("HAIS") and the Chairperson for the Commission on Accreditation at the National Association of Independent Schools, testified that Loveland also has Commission on Accreditation of Rehabilitation Facilities ("CARF") accreditation.  [ROA, Hrg. Trans., Apr. 8, 2010, at 495-97, 530-31; Pet.'s Exh. 22, at 370-77 (CARF 2008 Survey Report for Loveland Academy).]  Mr. Witt explained, however, that HAIS denied Loveland a private school license, which he characterized as "a lower level of approval and recognition" than formal HAIS accreditation.  [ROA, Hrg. Trans., Apr. 8, 2010, at 528-29.]

she noted that James M.'s annual IEP was due on April 28, 2009. She explained that the IEP meeting would be held on April 24, 2009 unless Plaintiff Sherry M. provided her with written consent to waive the April 28, 2009 deadline and hold the IEP meeting after that date. Principal Lindsey informed Plaintiff Sherry M. that such consent was due by April 22, 2009. Finally, she advised Plaintiff Sherry M. that, if she was unavailable to attend the April 24, 2009 IEP meeting, she could participate by phone. [Id. at 16; ROA, Resp.'s Exh. 19, at 129 (04/11/09 – Letter from Principal Lindsey to Mr. and Mrs. M.).] Hearings Officer Haunani H. Alm ("Hearings Officer") found that Plaintiff Sherry M. received this letter and agreed to its conditions. [Hrg. Decision at 16.]

Plaintiff Sherry M. did not provide timely written consent to extend James M.'s annual IEP deadline. The Hearings Officer found that Plaintiff Sherry M.'s letter requesting postponement of the annual IEP meeting, while dated April 23, 2009, was not received by Kahuku until "[s]ometime after the April 24, 2009 IEP meeting[.]" [Id. at 17.]

James M.'s IEP team drafted his 2009-2010 IEP during the April 24, 2009 meeting. The IEP provided: (1) 1890 minutes per week of special education services; (2) 900 minutes per quarter of speech language therapy; (3) 1940 minutes per week of one-on-one adult support; (4) occupational therapy consultation

at a rate of three times per quarter; (5) extended school year
services; and (6) supplementary aids and services, program
modifications, and supports for school personnel. [ROA, Pet.'s
Exh. 6, at 47 (04/24/09 – Individualized Education Program).]
The final category included extended time, modifications to work
load and assignments, use of a word processor, educational
consultancy services, and parent training. [Id.; Hrg. Decision
at 17.]

        The School District held subsequent IEP meetings for
James M. on June 18, 2009, September 2, 2009, and September 17,
2009. [Hrg. Decision at 17-19.] Plaintiff Sherry M. attended
those meetings and expressed the following concerns about the
April 24, 2009 IEP: (1) the lack of an after-school program; (2)
the lack of direct occupational therapy services; (3)
insufficient speech therapy services; (4) insufficient one-to-one
adult support services; and (5) insufficient occupational
consultation services. [Id. at 17.] Plaintiff Sherry M. also
expressed concern over the vagueness of the phrase "one-to-one
adult support." [Id.]

        During the June 18, 2009 meeting, the IEP team
discussed James M.'s transition back to Kahuku and provided
Plaintiff Sherry M. with a draft transition plan. Although
Plaintiff Sherry M. pledged at that time to consult Loveland
staff about James M.'s transition needs, she did not provide the

IEP team with any transition advice from Loveland at future meetings. [Id. at 17-18.]

The September 17, 2009 IEP meeting culminated in a revised 2009-2010 IEP for James M. The newly revised IEP included: (1) 2071 minutes per week of special education; (2) 120 minutes per week of speech language therapy; (3) 2971 minutes per week of one-to-one adult support; (4) 1920 minutes per month of educational consultation; (5) occupational therapy consultation three times per quarter; (6) 240 minutes per month of parent training; (7) 240 minutes per month of team collaboration; (8) extended school year services; and (9) each of the supplementary aids, services, program modifications, and supports for school personnel listed in the April 24, 2009 IEP. [ROA, Pet.'s Exh. 3, at 26 (09/17/09 – Individualized Education Program); Hrg. Decision at 19.]

## II.  **Procedural History**

On or about February 1, 2010, Plaintiffs filed a request with Defendant for an impartial due process hearing. Defendant duly transmitted the request to the Hawai`i Department of Commerce and Consumer Affairs, Office of Administrative Hearings. The parties failed to resolve their differences at a preliminary resolution session and the matter proceeded to hearing. [Hrg. Decision at 3.]

On March 17, 2010, the Hearings Officer ruled to extend

the forty-five-day decision deadline from April 16, 2010 to May 31, 2010. [Id. at 3-4 (citing Haw. Admin. R. § 8-60-69).] The Hearings Officer held a four-day due process hearing commencing April 6, 2010. The Hearings Officer received testimony from over fifteen witnesses, including private and public teachers, administrators, and educational consultants. Following the hearing, the parties submitted closing briefs. [Id. at 4.] In a decision issued on May 31, 2010, the Hearings Officer concluded that Defendant offered James M. a FAPE and that Plaintiffs were not entitled to reimbursement for their private school expenditures. [Id. at 26.] The instant appeal followed.

In their opening brief, Plaintiffs argue that Defendant violated both their procedural and substantive rights under the IDEA. With respect to procedure, Plaintiffs contend that the School District failed to provide Plaintiff Sherry M. with a meaningful opportunity to participate in the formulation of her child's IEP. With respect to substance, Plaintiffs argue that the IEPs of April 24, 2009 and September 17, 2009 fail to sufficiently address James M.'s academic, developmental, and functional needs. Specifically, Plaintiffs claim the following deficiencies: (1) insufficient speech language therapy; (2) inadequate provision of one-on-one paraprofessional services; (3) absence of direct occupational therapy services; (4) absence of a transition plan; and (5) absence of mental health therapy.

In its responsive brief, Defendant rejects these claims, contending that Plaintiffs received a meaningful opportunity to participate in the IEP formulation process and that the resulting IEPs were substantively adequate.

**DISCUSSION**

## I.   **IDEA Overview**

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1998)) (some citations omitted).  It ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).

The IDEA defines FAPE as

> special education and related services that –
> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education, and formulate and implement an IEP.  See generally 20 U.S.C. § 1414.  The IEP is to be developed by an "IEP Team" composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child.  § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE."  L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009) (citing W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23, 960 F.2d 1479, 1484 (9th Cir. 1992)) (some citations omitted).  Once a procedural violation of the IDEA is identified, the court "must determine whether that violation affected the substantive rights of the parent or child."  Id. (citations omitted).  "'[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE.'"  Id. (quoting Target Range, 960 F.2d at 1484) (alteration in original) (some citations omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education.  J.W. v. Fresno Unified Sch. Dist., 626

F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" Id. (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201 (1982)). The FAPE need only be "'appropriately designed and implemented so as to convey' [the] [s]tudent with a 'meaningful' benefit." Id. at 433 (quoting Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999)).

If a parent disagrees with the contents of an IEP, the parent may challenge the contents thereof by demanding an administrative due process hearing to be conducted by the local or state educational agency. See 20 U.S.C. § 1415(b)(6), (f)(1)(A). Parents may also send their student to a private program and seek retroactive tuition reimbursement from the state. See Forest Grove Sch. Dist. v. T.A., 129 S.Ct. 2484, 2493, 2496 (2009) (citations omitted). Where parents unilaterally withdraw a child from public school, they "do so at their own financial risk." Id. at 2496 (citations and internal quotation marks omitted). Parents challenging an IEP are entitled to reimbursement only if "a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act." Id. (citations and internal quotation marks omitted); see also 34 C.F.R. § 300.148(c).

## II.  **Standard of Review**

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court –
>   (i) shall receive the records of the administrative proceedings;
>   (ii) shall hear additional evidence at the request of a party; and
>   (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that "'due weight'" be given to the administrative proceedings. L.M. v. Capistrano, 556 F.3d at 908 (quoting Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982)) (some citations omitted). The amount of deference accorded is subject to the court's discretion. J.W., 626 F.3d at 438 (citing Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)).  In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" L.M. v. Capistrano, 556 F.3d at 908 (quoting Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995)). "Substantial weight" should be given to the hearings officer's decision when it "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the

complexity of the issues presented." Cnty. of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466-67 (9th Cir. 1996) (citation and quotation marks omitted)). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." Wartenberg, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed de novo." A.M. v. Monrovia Unified Sch. Dist., 627 F.3d 773, 778 (9th Cir. 2010) (citing Wartenberg, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" [Rowley, 458 U.S. at 206-07] (footnotes omitted). "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." Id. at 207.

J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should

be reversed.  <u>J.W. v. Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 438 (9th Cir. 2010) (citing <u>Clyde K. v. Puyallup Sch. Dist., No. 3</u>, 35 F.3d 1396, 1399 (9th Cir. 1994)).

## III. **Procedural Compliance**

In the instant case, Plaintiffs argue that the School District violated Sherry M.'s right to meaningful participation in the IEP formulation process.  [Opening Br. at 6-10.]  They contend that the School District failed to take adequate steps to ensure Plaintiff Sherry M. was present at the IEP meeting or otherwise to afford her the opportunity to participate.  [<u>Id.</u> at 6, 9 (noting that under § 1414(d)(1)(B), an "individualized education program team" includes the "parents of a child with a disability").]  More specifically, Plaintiffs allege that the School District failed to schedule the April 24, 2009 IEP meeting at a mutually agreed on time and place.  [<u>Id.</u> at 6 (quoting § 300.322(a)(2)).]  Plaintiffs also allege that, at the subsequent IEP meetings for James M., the School District failed to consider Plaintiff Sherry M.'s concerns about her child's educational needs.  [<u>Id.</u> at 10-12.]

According to Plaintiffs, Principal Lindsey proceeded with the April 24, 2009 meeting despite being told that Plaintiff Sherry M. was not available to participate.  [<u>Id.</u> at 8.]  Plaintiffs cite two communications – a phone communication on

April 23, 2009[3] and a hand-delivered letter arriving after the April 24, 2009 meeting[4] – as evidence of Plaintiffs' attempts to reschedule the IEP conference. [Id. at 7-8.] Plaintiffs argue that "there is no statutory requirement that the [Department of Education] receive this consent in writing from Plaintiff" and that such a requirement "does not supersede federal law[.]" [Id. at 8.]

Defendant contends that Principal Lindsey advised Plaintiffs of their right to waive in writing the April 28, 2010 IEP deadline and hold the IEP meeting at a later date. Since Principal Lindsey did not receive a timely consent to extend the IEP deadline, and because James M.'s IEP was set to expire by April 28, 2009,[5] Principal Lindsey convened the April 24, 2009

---

[3] According to the administrative hearing transcript, Plaintiff Sherry M. testified that on April 23, 2009, she called Principal Lindsey and requested that James M.'s IEP meeting be held after his April 28, 2009 IEP deadline. Plaintiff Sherry M. also testified that during the April 23, 2009 telephone conversation, she agreed to furnish Principal Lindsey with written consent authorizing the delay. [ROA, Hrg. Trans., Apr. 7, 2010, at 372-73.]

[4] The Hearings Officer found that Principal Lindsey received the letter after the April 24, 2009 IEP meeting. [Hrg. Decision at 16-17.] Plaintiffs do not refute this finding on appeal. [Opening Br. at 8.]

[5] James M.'s IEP for the 2008-2009 academic year was developed on April 28, 2008 and May 8, 2008 and set to expire on April 28, 2009. [ROA at 167-68 (05/07/10 – Respondent Department of Education's Closing Brief, Exh. A).] Under 34 C.F.R. § 300.324(b)(1), a student's IEP must be reviewed not less than once annually and revised as necessary. See also 20 U.S.C. § (continued...)

IEP meeting without Plaintiff Sherry M. [Answering Br. at 11-13.]

Defendant points out that Plaintiff Sherry M. attended three additional IEP meetings for her son during the summer and fall of 2009. During these meetings, members of James M.'s IEP team had the opportunity to express concerns about the April 24, 2009 IEP. [Id. at 14-15.] Plaintiff Sherry M. agrees that she participated in these IEP meetings, although she argues that the IEP team disregarded her recommendations. [Opening Br. at 11-12.] In response to some of Plaintiff Sherry M.'s concerns, the IEP team revised James M.'s 2009-2010 IEP on September 17, 2009. [Hrg. Decision at 19.]

School districts have an affirmative obligation to take steps to ensure that parents of a student are present at IEP meetings or otherwise have the opportunity to participate. 34 C.F.R. § 300.322(a). This obligation includes scheduling a meeting at a mutually agreed upon time and place, providing reasonable notice of this meeting, and using alternative methods, such as individual or conference telephone calls, to ensure parent participation. § 300.322(a)-(c). Where the school district is unable to convince the parents that they should attend, the school district may hold the meeting in their

---

[5](...continued)
1414(d)(4)(A).

absence, but must make a record of its attempts to accommodate the parents.  § 300.322(d).

In a letter dated April 11, 2009, Principal Lindsey informed Plaintiff Sherry M. that: (1) James M.'s annual IEP was due on April 28, 2009; (2) if Kahuku did not received a consent letter from her by April 22, 2009, then the IEP team would be required to meet to review James M.'s IEP on or before April 28, 2009; and (3) if she was unable to attend the April 24, 2009 meeting, she could participate by phone.  [Hrg. Decision at 16; ROA, Resp.'s Exh. 19, at 129 (04/11/09 – Letter from Principal Lindsey to Mr. and Mrs. M.).]  The Hearings Officer found that Plaintiff Sherry M. received this letter and agreed to its conditions.  [Hrg. Decision at 16.]  The Hearings Officer also found that Principal Lindsey did not receive Plaintiff Sherry M.'s consent letter, dated April 23, 2009, until after the April 24, 2009 IEP meeting.  [Id. at 17.]  The Court notes that Principal Lindsey kept records of her communications with Plaintiff Sherry M. regarding the scheduling of the April 24, 2009 IEP meeting.  [Id. at 16-17.]

Based on the preponderance of the evidence, the Court FINDS that Principal Lindsey offered reasonable accommodations to Plaintiff Sherry M. in advance of the April 24, 2009 IEP meeting. The Court further FINDS that Principal Lindsey's request for written consent to hold the IEP meeting after the April 28, 2009

16

deadline was a reasonable measure to protect the school in light of the strict annual review requirements of § 300.324(b)(1). Finally, the Court FINDS that Defendant gave Plaintiff Sherry M. the opportunity to express concerns about James M.'s 2009-2010 IEP at three additional IEP meetings.  The Court therefore CONCLUDES that Defendant fulfilled its statutory obligations and offered Plaintiff Sherry M. a meaningful opportunity to participate in her child's IEP formulation process.

## IV. <u>Substantive Compliance</u>

Plaintiffs argue that the IEPs of April 24, 2009 and September 17, 2009 are substantively inadequate because they fail to fully address James M.'s academic, developmental, and functional needs.  [Opening Br. at 12-13 (citing § 300.324).] Specifically, Plaintiffs claim the following inadequacies: (1) insufficient speech language therapy; (2) inadequate provision of one-on-one paraprofessional services; (3) absence of direct occupational therapy services; (4) absence of a transition plan; and (5) absence of mental health therapy.  [<u>Id.</u> at 11-23.]

As a general matter, the Court FINDS that the Hearings Officer's findings and conclusions are "thorough and careful" and therefore entitled to increased deference.  See <u>L.M. v. Capistrano</u>, 556 F.3d at 908 (citation and internal quotation marks omitted).  The Hearings Officer summarized the testimony of the teachers, administrators, therapists, and consultants

involved in the process, and created a detailed decision explaining her factual findings and legal conclusions.

## A.   Insufficient Speech Language Therapy

Plaintiffs claim that the School District failed to provide James M. with an adequate amount of speech language therapy. [Opening Br. at 14-16.] They reject the School District's offer of 120 minutes per week of such therapy and insist that James M. "need[s] at least 300 minutes per week of speech/language services[.]" [Id. at 16.] Plaintiffs argue that Loveland's assignment of 300 minutes per week of speech language services most accurately reflects James M.'s needs. [Id.]

The September 17, 2009 IEP provided for 120 minutes per week of speech language therapy, including "at least 1 hour of an [i]ndividual session with a [l]icensed [s]peech [l]anguage [p]athologist per week and 1 hour [of consultative services] to be spread between . . . teachers and adult support professionals[.]"[6] [ROA, Pet.'s Exh. 3, at 26 (09/17/09 – Individualized Education Program); Hrg. Decision at 24.] The IEP further states that James M.'s "[s]peech [l]anguage [t]herapy objectives will continue to be worked on throughout the entire

_____

[6] The IEP team increased the amount of speech language therapy services in its revised IEP for 2009-2010. Whereas the April 24, 2009 IEP provided for 900 minutes per quarter (approximately 100 minutes per week), the September 17, 2009 IEP provided for 120 minutes per week. [ROA, Pet.'s Exh. 6, at 47 (04/24/09 – Individualized Education Program); Pet.'s Exh. 3, at 26 (09/17/09 – Individualized Education Program).]

18

school day in all classes and educational settings." [ROA, Pet.'s Exh. 3, at 26.] As noted by the Hearings Officer, placement at Kahuku would also have enabled James M. to "practice his speech and communication skills with typically developing peers in a variety of different settings, exactly what he will need to do when he leaves the high school setting." [Hrg. Decision at 24.]

In contrast, Loveland provided James M. with 300 minutes per week of speech language services, including one-to-one direct services, group speech services, combined speech-occupational therapy, and after-school speech activities. [Id.] While James M. may have benefited from these additional services, the Hearings Officer found that the School District's therapy services "were sufficient for [James M.] to access his education and address his speech language needs." [Id. at 25.]

Department of Education Speech Language Pathologist Helen-Jean Kaniho ("Pathologist Kaniho") testified at the administrative hearing that, from approximately January 2006[7] to July 2008, James M. received approximately the same amount of speech language therapy at Kahuku as the IEP Team granted him for

_____

[7] Pathologist Kaniho testified that in January 2006, James M. was initially provided with one hour of direct speech language services per week, but that the services were "increased shortly after" to include an additional hour of collaborative and consultative services. [ROA, Hrg. Trans., Apr. 8, 2010, at 599, 630-31.]

his 2009-2010 IEPs: two hours per week.  [ROA, Hrg. Trans., Apr. 8, 2010, at 599, 630-31.]  Pathologist Kaniho explained that, during the two-and-a-half-year period she assisted James M., he learned to control his drooling sufficient "to access his curriculum."  [Id. at 599; id. at 600 (noting that James M. could "express his ideas and be understood without drooling").]  In preparation for the September 2009 IEP meetings, Pathologist Kaniho observed James M. at Loveland Academy to evaluate his progress and needs.  [ROA, Resp.'s Exh. 12, at 86-89 (08/19/09 – Off Campus Visitation Report – Loveland Academy).]  She testified at the administrative hearing that, while she noticed a slight improvement in James M.'s ability to control his saliva, he suffered from diminished eye contact and demonstrated no marked improvement in intelligibility.  [ROA, Hrg. Trans., Apr. 8, 2010, at 614-15.]

Plaintiffs fail to prove that James M. requires 300 minutes per week of speech language services.  They also fail to prove why the School District's offer – the same amount of services provided to James M. while previously enrolled at Kahuku – does not create a "basic floor of opportunity" or bestow James M. with a "meaningful benefit."  The Court FINDS that there is no clear evidence that the IEPs were deficient in their provision of speech language services.

## B. Inadequate Provision of One-to-One Paraprofessional Services

Plaintiffs make two arguments regarding the inadequacy of the School District's provision of one-to-one paraprofessional services. First, Plaintiffs argue that the School District improperly curtailed the quantity of one-to-one services because it "did not explain whether any data were collected or reviewed to support [Defendant's] basis for the reduction." [Opening Br. at 18 (citing ROA, Hrg. Trans., Apr. 9, 2010, at 719 (testimony of Kahuku IDEA Coordinator Teresann Makaiwi Tau`a)).] Second, Plaintiffs argue that James M. should have been assigned a skills trainer to administer such services. [Id. (citing ROA, Hrg. Trans., Apr. 9, 2010, at 722 (testimony of Kahuku IDEA Coordinator Teresann Makaiwi Tau`a)).]

Department of Education District Education Specialist Jennifer Luke-Payne ("Education Specialist Luke-Payne") testified during the administrative hearing that James M.'s reduction in services was the result of his reduced class schedule.[8] [ROA, Hrg. Trans., Apr. 8, 2010, at 557-58.] Rather than attending class for a full school day as well as after-school services,

---

[8] Education Specialist Luke-Payne attended James M.'s April 24, 2009, June 18, 2009, September 2, 2009, and September 17, 2009 IEP meetings and assisted in the formulation of James M.'s 2009-2010 IEPs. [Hrg. Decision at 20; ROA, Pet.'s Exh. 6, at 49 (04/24/09 – Individualized Education Program); Pet.'s Exh. 3, at 28 (09/17/09 – Individualized Education Program).]

James M. required only a half day of classes.  [Id. 557-59.]  As
summarized by the Hearings Officer:

> The reason for fewer services was because [James
> M.] required only 3.5 credits to graduate from
> high school.  [James M.] would spend half of the
> school day on academics and classes.  [He] would
> spend the other half of the school day learning to
> navigate the community and gain skills leading
> toward employment.

[Hrg. Decision at 20.]

Both of Defendant's Prior Written Notices for James
M.'s 2009-2010 IEPs also cite his reduced course load as the
reason for the reduction in services.  [ROA, Pet.'s Exh. 6, at
33-34 (05/02/09 – Prior Written Notice of Department Action);
Pet.'s Exh. 3, at 9 (09/23/09 – Prior Written Notice of
Department Action).]  Specifically, the Prior Written Notice for
the April 24, 2009 IEP explains that "James' course amount to
graduate will only require him to be in classes for half of the
day. . . . Therefore additional minutes for one to one adult
support would no longer be needed."  [ROA, Pet.'s Exh. 6, at 34
(05/02/09 – Prior Written Notice of Department Action).]

For the reasons outlined above, the Court FINDS that
the School District's reduction in one-to-one paraprofessional
services was rationally grounded and adequately explained.

Plaintiffs' second argument, that James M. should have
received a dedicated skills trainer because he met the criteria
to be provided with one, is equally unavailing.  [Opening Br. at

18.]  The April 24, 2009 IEP provided James M. with 1940 minutes per week of one-to-one adult support.  [ROA, Pet.'s Exh. 6, at 47 (04/24/09 – Individualized Education Program).]  The revised IEP, issued September 17, 2009, increased such services to 2971 minutes per week.  [ROA, Pet.'s Exh. 3, at 26 (09/17/09 – Individualized Education Program).]  According to Education Specialist Luke-Payne, one-on-one adult support must be administered "by a paraprofessional (formerly known as a skills trainer), a part-time teacher, an educational assistant, or the classroom teacher" with a minimum of forty hours training specific to the child's needs.  [Hrg. Decision at 19; ROA, Hrg. Trans., Apr. 8, 2010, at 548-50.]  The Hearings Officer adopted Education Specialist Luke-Payne's testimony in her findings of fact.  [Hrg. Decision at 19.]  Plaintiffs fail to prove why these professionals, which include the qualified skills trainers requested by Plaintiffs, could not adequately assist James M. in the classroom.

Although the Court believes that assigning James M. a skills trainer may have benefited him, a FAPE need not provide the "absolutely best" or "potential-maximizing" education.  J.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted).  While there may be an appropriate case for this Court to consider the personnel decisions made by Defendant, James M.'s IEP was not deficient

simply because it failed to assign him a skills trainer.  In this request, Plaintiffs seek too much of the IDEA.  The Court CONCLUDES that the School District's offer of one-to-one adult support services is reasonably calculated to enable James M. to receive educational benefit.

C.  **Absence of Direct Occupational Therapy Services**

Plaintiffs dismiss the School District's offer of consultative occupational therapy and argue that James M. requires direct occupational services to adequately address his needs.  [Opening Br. at 18-23.]  Noting the testimony of Certified Occupational Therapy Assistant Tenora Watt ("Occupational Therapy Assistant Watt"), a therapy assistant employed by Loveland, Plaintiffs claim that James M. has fine motor, gross motor, motor planning, and sensory deficits. [Opening Br. at 18 (citing ROA, Hrg. Trans., Apr. 7, 2010, at 290).]  Plaintiffs further claim that James M. has low muscle tone that affects his "overall body and his hand usage," including the ability to write.  [Id. at 19 (citing ROA, Hrg. Trans., Apr. 7, 2010, at 290).]  The Hearings Officer recognized James M.'s writing problem in her Hearing Decision, explaining that "[a]ny type of fine motor skill or handwriting produced by [James M.] clearly takes a lot of time and effort on his part and is a very exhausting venture."  [Hrg. Decision at 25.]

Loveland provided James M. with between 90 and 120 minutes per week of direct occupational services to address his motor control and sensory needs. [ROA, Hrg. Trans., Apr. 7, 2010, at 303 (testimony of Occupational Therapy Assistant Watt).] Occupational Therapy Assistant Watt testified that James M. needed such services both in April 2009 and September 2009. [Id. at 303, 306.] She explained that the primary goal of the direct service program was to develop James M.'s hand strength, coordination, and dexterity. [Id. at 303-06.]

In contrast, the School District offered James M. occupational therapy on a consultation basis three times per quarter. [Hrg. Decision at 20; ROA, Pet.'s Exh. 6, at 47 (04/24/09 – Individualized Education Program); Pet.'s Exh. 3, at 26 (09/17/09 – Individualized Education Program); id. at 9 (09/23/09 – Prior Written Notice of Department Action) (noting that "James has acquired the necessary skills to access his education without the need for direct services").] The Hearings Officer found that this offer was a minimum requirement and that James M. "would get as much occupational therapy consult as his needs dictated." [Hrg. Decision at 20, 25 (noting the testimony of Education Occupational Therapist Luke-Payne).] The Hearings Officer also found that the School District was willing to modify James M.'s 2009-2010 IEP to include direct services should the need arise. [Id. at 20.]

The Hearings Officer further concluded that James M. could access his education without direct occupational therapy by using computers or word processors to complete his school work. The Hearings Officer noted that James M. used computers or word processors at both Kahuku and Loveland to complete written assignments, and that sharpening his typing skills would serve him well in the future. [Id. at 25-26.]

Based on the findings above, the Court CONCLUDES that the occupational services in James M.'s IEPs sufficiently allowed him to access his education.

### D. **Absence of a Transition Plan**

Plaintiffs argue that James M.'s IEPs for 2009-2010 were inadequate because they lacked a transition plan from Loveland back to Kahuku. [Opening Br. at 11-12.] Plaintiffs state that, while the School District provided Plaintiff Sherry M. with a draft transition plan at the June 18, 2009 meeting, the plan "was not finalized, was not attached to the September 17, 2009 IEP nor [sic] placed in James' school file." [Id. at 12 (citing ROA, Hrg. Trans., Apr. 8, 2010, at 585, 588).] Defendant argues that Plaintiffs' grievance is without merit because there is no requirement under the IDEA that a transition plan be provided to a student transferring from different educational settings. [Answering Br. at 24 (citing B.B. v. Hawaii Dept. of Educ., 483 F. Supp. 2d 1042 (D. Haw. 2006)).]

26

Defendant further contends that Plaintiffs presented no evidence at the administrative hearing that James M. required a transition plan. [Id. at 23.] Finally, Defendant argues that, despite the School District's willingness to formulate a transition plan, Plaintiff Sherry M. failed to follow through on her promise to consult educators at Loveland. [Id. at 24 (citing Hrg. Decision at 19; ROA, Resp.'s Exh. 6, at 54 (09/23/09 – Prior Written Notice of Department Action); Hrg. Trans., Apr. 8, 2010, at 586 (testimony of Education Specialist Luke-Payne)).]

The Hearings Officer found that, at the June 18, 2009 meeting, the IEP team discussed James M.'s transition needs and formulated a draft transition plan. At that time, Plaintiff Sherry M. promised the IEP team that she would speak to staff at Loveland about James M.'s transfer needs. [Hrg. Decision at 18.] According to the Hearings Officer, "[f]uture IEP meetings in September 2009 reflect that [Plaintiff Sherry M.] did not provide any information from [Loveland] regarding [James M.'s] transition to [Kahuku]." [Id.]

In B.B. v. Hawaii Department of Education, the court held that the IDEA only mandates that transition services be implemented for students in a limited set of circumstances:

> "[A] coordinated set of activities" that is "based upon the individual student's needs" is required when a student transitions from "school to post-school activities . . . post-secondary education, vocational training, integrated employment . . . continuing adult education, adult

27

services, independent living, or community
participation." 20 U.S.C. § 1401(30)(2004).
This Court has previously held that while "the
IDEA requires an IEP to have a statement of needed
transition services in some circumstances, the
statutory provision of the IDEA specifically
addressing transition services does not mandate
such services when a transition from private to
public school takes place." L.M. v. Department of
Education, 2006 WL 2331031, *16 (D. Haw. 2006)
(citing Bock v. Santa Cruz City Schools, No.
95-20168, 1996 WL 539715 at *5 (N.D. Cal. 1996)).

483 F. Supp. 2d at 1056-57 (alterations in original).

Given that James M. was to be moved from Loveland, a

private school, to Kahuku, a public school, the School District

was under no obligation to provide transition services for

James M. The Court therefore FINDS that James M.'s 2009-2010

IEPs were not defective as a result of the School District's

failure to provide Plaintiffs with a finalized transition plan.

### E. Absence of Mental Health Therapy

Plaintiffs argue that James M.'s IEPs for 2009-2010

were inadequate because they failed to provide mental health

therapy services. [Opening Br. at 16-17.] They claim that such

therapy is required to address James M.'s social development

needs as well as his "problems with depression, withdrawal,

working memory and recall, dystonia and hypersensitivity." [Id.

at 16 (citing ROA, Hrg. Trans., Apr. 6, 2010, at 20-21 (testimony

of George Bergholz, Ph.D.); Hrg. Trans., Apr. 7, 2010, at 328-29,

331 (testimony of Loveland Clinical Director John Loveland)).]

Defendant contends that Plaintiffs did not raise the issue of mental health therapy in their Request for Due Process Hearing and that the Court should not consider it for the first time on appeal.  [Answering Br. at 18.]

As a general rule, arguments not raised at an administrative hearing cannot be raised for the first time on appeal to the district court.  The Ninth Circuit applied this rule to IDEA appeals in Robb v. Bethel School District No. 403, where it held that, "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required."  308 F.3d 1047, 1048 (9th Cir. 2002).  Exhaustion may be avoided, however, if "it would be futile or offer inadequate relief, or if the agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." N.D. v. Hawaii Dep't of Educ., 600 F.3d 1104, 1110 (9th Cir. 2010) (citations and internal quotation marks omitted)).  None of these exceptions apply in this case.

The Ninth Circuit has also held that review in IDEA cases is specifically limited to the issues raised in the administrative complaint.  Cnty. of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1465 (9th Cir. 1996) ("The scope of the administrative hearing mandated by [former] section

1415(b)(2)[9] is limited to the 'complaint' raised to obtain the hearing."). 20 U.S.C. § 1415 codified this holding, providing that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise." § 1415(f)(3)(B).

In the present case, there is evidence that Plaintiffs raised the issue of mental health therapy before the Hearings Officer. Plaintiffs briefly mention this matter in their opening argument. [ROA, Hrg. Trans., Apr. 6, 2010, at 11.] They also raise it in their closing brief. [ROA at 39 (05/07/10).] The problem, however, is that Plaintiffs did not present the issue of mental health therapy in their Request for Due Process Hearing. [ROA at 3-6 (02/01/10).] Furthermore, Defendant has repeatedly objected to its review, [ROA at 136 (05/07/10 – Respondent's Closing Brief); Answering Br. at 18-19,] and the Hearings Officer did not examine the issue. As a result, the Court FINDS that the issue of mental health therapy is precluded. See, e.g., B.T. v. Hawaii Dep't of Educ., 676 F. Supp. 2d 982, 988 (D. Hawai`i 2009) (denying review of an IDEA claim due to "insufficient evidence or discussion" of the matter at the administrative level) (citing

_____

9 The current section governing the subject matter of due process hearings is 20 U.S.C. § 1415(f)(3)(B).

J.L. v. Mercer Island Sch. Dist., 575 F.3d 1025, 1038 (9th Cir. 2009)).

**F.    James M. Was Offered a FAPE**

The Court notes that, throughout the proceedings, Plaintiff Sherry M. has sought, as all good parents do, to secure the best services for her child.  James M.'s grade point average and academic successes are commendable, and a credit to his hard work, his mother's commitment and devotion, and the proficiency and excellence of his teachers and therapists.  The role of the district court in IDEA appeals, however, is not to determine whether an educational agency offered the best services, but whether the services offered confer the child with a meaningful benefit.  Further, while the parties appear divided by honest differences of opinion, the Court finds compelling evidence that the School District constructed an individualized program tailored to meet James M.'s educational, developmental, and functional needs.  Based on the preponderance of the evidence, the Court therefore CONCLUDES that Defendant offered James M. a FAPE in substantive compliance with the IDEA.

**V.    Reimbursement for Placement at Loveland**

Finally, Plaintiffs seek reimbursement for private school tuition and related expenses.  [Opening Br. at 23-24.] Under 34 C.F.R § 300.148(c), reimbursement for private school expenditures is available

> [i]f the parents of a child with a disability, who
> previously received special education and related
> services under the authority of a public agency,
> enroll the child in a private preschool,
> elementary school, or secondary school without the
> consent of or referral by the public agency, a
> court or a hearing officer may require the agency
> to reimburse the parents for the cost of that
> enrollment if the court or hearing officer finds
> that the agency had not made FAPE available to the
> child in a timely manner prior to that enrollment
> and that the private placement is appropriate.

Parents who unilaterally transfer a child from a public school to a private school usually do so "at their own financial risk." <u>Forest Grove Sch. Dist. v. T.A.</u>, 129 S.Ct. 2484, 2496 (2009) (citations and internal quotation marks omitted). Because Plaintiffs did not prove that James M. had a defective IEP, the court FINDS that Plaintiffs are not entitled to reimbursement for expenses incurred at Loveland. The Court therefore DENIES Plaintiffs' request for reimbursement.

## <u>CONCLUSION</u>

On the basis of the foregoing, the Court HEREBY AFFIRMS the Hearings Officer's Findings of Fact, Conclusions of Law and Decision of May 31, 2010 and DENIES Plaintiffs' request for reimbursement for private school tuition and related expenses.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 25, 2011.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge


**JAMES M., BY AND THROUGH HIS PARENT SHERRY M. V. STATE OF HAWAII, DEPARTMENT OF EDUCATION; CIVIL NO. 10-00369 LEK; ORDER AFFIRMING HEARING OFFICER'S MAY 31, 2010 DECISION**